

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **BARRY IRWIN HENSLEY** | § | Case No. 12-42785 |
| xxx-xx-3710 | § | |
| | § | |
| | § | |
| Debtor | § | Chapter 7 |

| | | |
|---|---|---|
| HARRY (SONNY) MARGOLIS | § | |
| and DANA MARGOLIS | § | |
| | § | |
| Plaintiffs | § | |
| | § | |
| v. | § | Adversary No. 12-4180 |
| | § | |
| BARRY IRWIN HENSLEY | § | |
| | § | |
| Defendant | § | |

## MEMORANDUM OF DECISION REGARDING
## PLAINTIFFS' SECOND MOTION FOR SUMMARY JUDGMENT[1]

ON THIS DATE the Court considered the Second Motion for Summary Judgment

(the "Motion") filed by the Plaintiffs, Harry (Sonny) Margolis and Dana Margolis

("Plaintiffs"), in the above-referenced adversary proceeding, the response in opposition

filed by the Debtor-Defendant, Barry I. Hensley, and the Plaintiffs' reply thereto.

The Plaintiffs' Amended Complaint seeks to have a judgment debt owed by the

Debtor-Defendant declared nondischargeable under various subsections of 11 U.S.C.

---

[1] This Memorandum of Decision is not designated for publication and shall not be considered as precedent, except under the respective doctrines of claim preclusion, issue preclusion, the law of the case or other evidentiary doctrines applicable to the specific parties in this proceeding.

§523(a).  The Second Motion for Summary Judgment deals solely with whether a portion

of the judgment debt owed by the Defendant arising from certain state court litigation

constitutes a debt for fraud or defalcation while acting in a fiduciary capacity under 11

U.S.C. §523(a)(4).[2]  Upon due consideration of the pleadings, the proper summary

judgment evidence submitted by the parties, and the relevant legal authorities, the Court

concludes that the Plaintiffs have demonstrated that there is no genuine issue as to any

material fact and that they are entitled to judgment as a matter of law that the portion of

the debt owed to them by the Debtor-Defendant arising from the judgment issued by the

219th Judicial District Court in and for Collin County, Texas, is nondischargeable under

§523(a)(4).

### Factual and Procedural Background[3]

In mid-2008, the Plaintiffs began discussions with the Defendant with regard to the

proposed construction of a residence for the Plaintiffs in the Shaddock Creek Estates

development near Frisco, Texas.  After having received an estimate from the Defendant

regarding the costs of constructing the home, the Plaintiffs contracted with the Defendant

in the summer of 2009 to construct the residence.  The construction process was a

contentious one, with each side now contending that various actions of the other

---

[2]    This Court has authority to enter a final judgment in this adversary proceeding since it statutorily constitutes a core proceeding as contemplated by 28 U.S.C. §157(b)(2)(I) and meets all constitutional standards for the proper exercise of full judicial power by this Court.

[3] The facts presented are those which stand uncontested between the parties and are presented only as a general factual background to the legal claims asserted in the case.  This section is not intended to resolve any disputed or contested facts.

precluded the successful construction of the house as contemplated.

On September 10, 2010, the Plaintiffs filed a state court lawsuit against the Defendant for breach of fiduciary relationship before the 219th Judicial District Court of Collin County, Texas (the "State Court") under case no. 219-03753-2010 (the "State Court Litigation").  On February 24, 2012, the State Court entered an order abating the prosecution in state court and submitting the matter to arbitration by the agreement of the parties.[4]  Richard Abernathy, Esq. was appointed as the Arbitrator by the State Court.

Before that arbitration could take place, on October 15, 2012, the Defendant filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in this Court under Case No. 12-42785, the Hon. Brenda T. Rhoades, presiding.  After a contested hearing in the bankruptcy case, the Court modified the stay in order to allow the arbitration hearing to take place and for a final judgment to be entered.[5]

On April 17, 2013, the Arbitrator ruled that the Defendant, jointly and severally with other parties, owed the sum of $98,737.99 to the Plaintiffs "for violations of Chapter 162, Texas Property Code,[6] including Section 162.005, Texas Property Code."[7]  The Arbitrator also awarded to the Plaintiffs attorney's fees in the sum of $75,000, court costs

---

[4]  Plaintiffs' Ex. A-1.

[5]  Meanwhile, the Plaintiffs had timely filed a complaint to determine dischargeability of a debt on November 26, 2012, seeking to except their claims from the scope of any discharge granted to the Defendant.  The prosecution of this adversary proceeding was subsequently abated to allow that state court process to be completed.  That abatement was terminated on August 16, 2013.

[6]  *See* 5 TEX. PROP. CODE ANN. § 162.001(a)  *et. seq.* (Vernon 2011 and Vernon Supp. 2014). The provisions of Chapter 162 are often referenced collectively as the Texas Construction Trust Fund Act (hereafter referenced as the "CTFA").

[7]  Plaintiffs' Ex. A-3 at p. 2.

of $4,204.57, and denied all of the counterclaims filed by the Defendant.[8]  That

arbitration award was finalized into a Final Judgment issued by the State Court on April

19, 2013 (the "State Court Judgment").  In interpreting the arbitration award and granting

final judgment, the State Court confirmed the award in favor of the Plaintiffs and against

the Defendant for "$98,737.99 for violation and fraud under Chapter 162, Texas Property

Code, including a finding of fraudulent conduct under 162.005 of said Texas Property

Code."[9]  No other findings of fact or conclusions of law were entered.  The Final

Judgment also confirmed the attorney's fee award, the court costs assessment and the

denial of the Defendant's counterclaims.[10]  It further ordered that post-judgment interest

would accrue on the judgment at the rate of 5% per annum.[11]  No appeal was taken from

the entry of the State Court Judgment.

　　　After the parties renewed the prosecution of this adversary proceeding, the

Plaintiffs filed this Second Motion for Summary Judgment.[12]  They assert that there are

no genuine issues of material fact pertaining to the CTFA award and that, under such

uncontested facts, they are entitled to a determination as a matter of law that the sum of

---

[8]  *Id.*

[9]  Plaintiffs' Ex. A-4 at p. 2.

[10]  *Id.*

[11]  *Id.*

[12]  A first motion for summary judgment had been filed by the Plaintiffs after the abatement of this lawsuit had been terminated, but it was dismissed by the Court as premature since the post-abatement management conference resulted in certain clarifying directives being issued to the Plaintiffs.

$98,737.99 awarded for violations of the CTFA, together with other ancillary awards, as evidenced by the State Court Judgment, are collectively nondischargeable as a debt for fraud or defalcation while acting in a fiduciary capacity under §523(a)(4).[13]

## Discussion

*Summary Judgment Standard*

The Plaintiffs brings their Motion for Summary Judgment in this adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7056.  That rule incorporates Federal Rule of Civil Procedure 56 which provides that summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986), *quoting* FED. R. CIV. P. 56(c). The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion, "and identifying those portions of the pleadings, depositions, answers to interrogatories, and . . . affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex*, 477 U.S. at 323. The moving party asserting that a fact cannot be genuinely disputed must support that

---

[13]  As stated earlier, the Plaintiffs' amended complaint also contains asserted causes of action under 11 U.S.C. §523(a)(2)(A) and §523(a)(6).  The (a)(6) claim was not addressed by the Second Motion for Summary Judgment. The Second Motion for Summary Judgment did address the same portion of the award under the State Court Judgment under §523(a)(2)(A).  However, because of the summary judgment granted herein under §523(a)(4), the Court need not adjudicate those claims under either subsection.

assertion by:

> (A) citing to particular parts of the materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials do not establish the . . . presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FED. R. CIV. P. 56(c).

The operation of the summary judgment standard depends upon which party will bear the burden of persuasion at trial.  If, as in this case, the burden of persuasion is on the moving party, "that party must support its motion with credible evidence–using any of the materials specified in Rule 56(c)–that would entitle it to a directed verdict if not controverted at trial."  *Celotex*, 477 U.S. at 331.  Upon a *prima facie* showing of entitlement to judgment as a matter of law, the non-movant may not rest upon the mere allegations or denials in its pleadings, but rather must demonstrate in specific responsive pleadings the existence of specific facts constituting a genuine issue of material fact for which a trial is necessary.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986) (*citing* FED. R. CIV. P. 56(e)).  If the nonmoving party cannot muster sufficient evidence to demonstrate a genuine issue of material fact, a trial would be useless.  The substantive law will identify which facts are material.  *Id.*

In this case, the Plaintiffs bear the burden to present a *prima facie* case for non-

dischargeability.  Thus, the Plaintiffs are entitled to a summary judgment only if there

exists no genuine issue of material fact as to each essential element under §523(a)(4).

The motion for summary judgment under consideration herein seeks judgment as a matter

of law through the application of collateral estoppel.  The Plaintiffs claim that the entry of

the State Court Judgment by the 219th Judicial District Court of Collin County, Texas,

forms the basis for a determination that the designated portion of the underlying judgment

debt is nondischargeable in the Defendant's Chapter 7 bankruptcy case.  Resolving this

question requires that the Court first determine the applicability of the doctrine itself.  If

collateral estoppel applies, any relevant factual findings (i.e., related to the required

elements for non-dischargeability) arising from the process leading to the entry of the

State Court Judgment should not be disturbed here.  The Court applies those findings to

the required elements for non-dischargeability to ascertain what factual issues, if any,

remain.   If collateral estoppel does not apply, the Plaintiffs' motion must be wholly

denied.

*Standards for Issue Preclusion (Collateral Estoppel).*

"Collateral Estoppel, or, in modern usage, issue preclusion, 'means simply that

when an issue of ultimate fact has once been determined by a valid and final judgment,

that issue cannot again be litigated between the same parties in any future lawsuit.'"

*Schiro v. Farley*, 510 U.S. 222, 232 (1994) (internal quotations omitted).  In other words,

"once an issue is actually and necessarily determined by a court of competent jurisdiction,

that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Montana v. U. S.*, 440 U.S. 147, 153 (1979) (*citing Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5 (1979)). "To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Id.* at 153-54.

In the bankruptcy dischargeability context, "parties may invoke collateral estoppel in certain circumstances to bar relitigation of issues relevant to dischargeability" and satisfy the elements thereof. *Raspanti v. Keaty (In re Keaty)*, 397 F.3d 264, 270 (5th Cir. 2005) (quotation marks omitted). In other words, when an issue that forms the basis for the creditor's theory of nondischargeability has been actually litigated in a prior proceeding, neither the creditor nor the debtor may relitigate those grounds. *RecoverEdge, L.P. v. Pentecost,* 44 F.3d 1284, 1294 (5th Cir. 1995). While the doctrine of issue preclusion applies in bankruptcy dischargeability litigation, a bankruptcy court retains exclusive jurisdiction to determine whether a debt is dischargeable. *Grogan v. Garner*, 498 U.S. 279, 284 n.11 (1991).

The inquiry into the preclusive effect of a state court judgment is guided, indeed mandated, by the full faith and credit statute, which states that "judicial proceedings . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken." 28

-8-

U.S.C. §1738 (1994). Thus, federal courts look to the principles of issue preclusion utilized by the forum state in which the prior judgment was entered. *Schwager v. Fallas (In re Schwager)*, 121 F.3d 177, 181 (5th Cir. 1997). Because the judgment against the Defendant was entered in a Texas state court, this Court applies the Texas law of issue preclusion. *Pancake v. Reliance Ins. Co. (In re Pancake)*, 106 F.3d 1242, 1244 (5th Cir. 1997); *Gober v. Terra + Corp. (In re Gober)*, 100 F.3d 1195 (5th Cir. 1996).

Collateral estoppel under Texas law prevents the relitigation of identical issues of law or fact that were actually litigated and were essential to the final judgment in a prior suit. *Texas Dept. of Public Safety v. Petta*, 44 S.W.3d 575, 579 (Tex. 2001). "The doctrine applies when the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit." *Eagle Properties, Ltd. v. Scharbauer*, 807 S.W.2d 714, 721 (Tex. 1991) (*citing Tarter v. Metropolitan Sav. & Loan Ass'n*, 744 S.W. 926, 927 (Tex. 1988). Specifically, a party is collaterally estopped from raising an issue under Texas law when: (1) the facts sought to be litigated in the second case were fully and fairly litigated in the first; (2) those facts were essential to the prior judgment; and (3) the parties were cast as adversaries in the first case. *Bonniwell v. Beech Aircraft Corp.*, 663 S.W.2d 816, 818 (Tex. 1984); *MGA Ins. Co. v. Charles R. Chesnutt, P.C.*, 358 S.W.3d 808, 817 (Tex. App.– Dallas 2012, no pet.). Once an actually litigated and essential issue is determined, that issue is conclusive in a subsequent action between the same parties." *Van Dyke v. Boswell, O'Toole, Davis & Pickering*, 697 S.W.2d 381, 384 (Tex. 1985).

In the context of issue preclusion, "issue" and "fact" are interchangeable.  The purpose of the reviewing court is to determine the specific facts brought that were already established through full and fair litigation.  As stated in the Fifth Circuit decision in *Fielder v. King (Matter of King),* 103 F.3d 17 (5th Cir. 1997):

> [I]ssue preclusion will prevent a bankruptcy court from determining dischargeability issues for itself only if "the first court has made specific, subordinate, factual findings on the identical dischargeability issue in question . . . and the facts supporting the court's findings are discernible from that court's record," *citing Dennis v. Dennis (Matter of Dennis),* 25 F.3d 274, 278 (5th Cir. 1994) ["Collateral estoppel applies in bankruptcy courts only if, *inter alia*, the first court has made . . . factual findings on the identical dischargeability issue in question – that is, an issue which encompasses the same *prima facie* elements as the bankruptcy issue."]

*Id.* at 19.

While separate and distinct findings of fact by a state trial court are preferable, they are rarely issued in bench trials under Texas law and factual findings need not be explicitly stated nor separately denominated in order for collateral estoppel principles to apply.  In other words, collateral estoppel under Texas law may be properly applied "with realism and rationality" through an examination of the state court proceeding to discern the subsidiary facts "necessarily decided" to reach a judgment in the first proceeding and which are germane to a determination of nondischargeability under the Bankruptcy Code.  *See, e.g., Fort Worth Hotel, L.P. v. Enserch Corp.*, 977 S.W.2d 746, 753-54 (Tex. App. –

Fort Worth 2003, no pet.) [collateral estoppel properly applied to establish negligence of defendant even though factfinder did not make any specific finding that a particular act or omission caused an explosion].  As the party asserting the preclusive effect of the findings arising from the State Court Litigation, the Plaintiffs have the burden of proof on all elements of collateral estoppel.

The summary judgment record clearly demonstrates that these two specific parties were adversaries in the State Court Litigation.  Indeed, the automatic stay was lifted by Judge Rhoades for the specific purpose of allowing the State Court Litigation to continue between the parties.  The summary judgment record clearly demonstrates that the fact of the Defendant's misconduct was essential to the entry of that portion of the State Court Judgment for which the Plaintiffs seek a determination of nondischargeability under §523(a)(4).  The State Court Judgment contains a finding that the Defendant violated the CTFA by explicit reference to its statutory location and it specifically finds that the actions of the Defendant, resulting in the CTFA violation, constituted fraudulent conduct as defined by §162.005 of the CTFA.[14]  The summary judgment record is also clear that

_____

[14]   Section 162.005 (1) of the Texas Construction Trust Fund Act states that:

(1) A trustee acts with "intent to defraud" when the trustee: .

(A)   retains, uses, disburses, or diverts trust funds with the intent to deprive the beneficiaries of the trust funds;

(B)   retains, uses, disburses, or diverts trust funds and fails to establish or maintain a construction account as required by Section 162.006 or fails to establish or maintain an account record for the construction account as required by Section 162.007; or

the facts as reflected in the State Court Judgment were fully and fairly litigated in the first action, as initially determined by the Arbitrator, and as subsequently affirmed by the 219th Judicial District Court in the State Court Judgment.  An actual evidentiary hearing was conducted by the Arbitrator.  Upon consideration of the admitted evidence, the Arbitrator issued the award to the Plaintiffs which was subsequently confirmed by the State Court pursuant to §171.087 of the Texas Civil Practice & Remedies Code.[15]  The Defendant admits his participation in all of the various stages of that State Court Litigation and admits the entry of the State Court Judgment against him.[16]  The Defendant sought no modification or correction of the arbitration award from the State Court.[17]  No appeal of the State Court Judgment was prosecuted by the Defendant.[18]  Thus, all three

---

>    (C)     uses, disburses, or diverts trust funds that were paid to the trustee in reliance on an affidavit furnished by the trustee under Section 53.085 if the affidavit contains false information relating to the trustee's payment of current or past due obligations.

5 TEX. PROP. CODE ANN. §162.005 (Vernon 2007).

[15]  Section 171.087 provides that, under the Texas Arbitration Act:

> Unless grounds are offered for vacating, modifying, or correcting an [arbitration] award under Section 171.088 or 171.091, the court, on application of a party, shall confirm the award.

6 TEX. CIV. PRAC. & REM. CODE ANN. §171.087 (Vernon 2011).

[16]  See *Defendant's Response in Opposition to Plaintiffs' Second Motion for Summary Judgment and Brief in Support* at ¶¶ 23-28 at p. 8.

[17]  See 6 TEX. CIV. PRAC. & REM. CODE ANN. §171.091 (Vernon 2011).

[18]  Section 171.098 of the Texas Arbitration Act specifies that:

(a)  A party may appeal a judgment or decree entered under this chapter or an order: . . .

-12-

requirements for the application of collateral estoppel under Texas law are clearly

established in this case[19] and the Defendant is thereby estopped from re-litigating those

---

(3) confirming or denying confirmation of an award.

(b)  The appeal shall be taken in the manner and to the same extent as an appeal from an order or judgment in a civil action.

6 TEX. CIV. PRAC. & REM. CODE ANN. §171.098 (Vernon 2011).

[19]  Collateral estoppel applies in this instance and is binding upon the Defendant and this Court, notwithstanding any error of law that the Arbitrator and the State Court may have made regarding the applicability of the CTFA to property owners at the time of the contract.  Any such error does not render the State Court Judgment void, but merely voidable.  As the Fifth Circuit has observed in applying Texas law:

> A void judgment is subject to both direct and collateral attack, while a judgment that is merely voidable must be corrected through ordinary appellate or other direct procedures. *Browning v. Placke*, 698 S.W.2d 362, 363 (Tex. 1985).  A judgment is void only when it is shown that the court had no jurisdiction over the parties or property, no jurisdiction of the subject matter, no jurisdiction to enter the particular judgment, or lacked capacity to act as a court.  *Id*.; *Cook v Cameron*, 733 S.W.2d 137, 139 (Tex. 1987).  All errors other than jurisdictional defects must render the judgment voidable rather than void and must be corrected on direct appeal.  *Browning*, 698 S.W.2d at 363.
> . . .
> Absent one of those rare circumstances that makes a judgment 'void,' the mere fact that an action by a court of appeals is contrary to a statute, constitutional provision or rule of civil or appellate procedure makes it 'voidable' or erroneous.  *Mapco, Inc. v. Forrest*, 795 S.W.2d 700, 703 (Tex. 1990). . . .

*Gober v. Terra + Corp. (In re Gober)*, 100 F.3d 1195, 1202-03 (5th Cir. 1996).

The State Court Judgment is further insulated from collateral attack as a void judgment because the application of the Texas CTFA was initially invoked in an arbitration proceeding to which both parties agreed.  Arbitration agreements are seriously favored in Texas.  "In Texas, arbitration is generally a contractual proceeding by which the parties to a controversy, in order to obtain a speedy and inexpensive final disposition of the disputed matter, select arbitrators or judges of their own choice, and by consent, submit the controversy to these arbitrators for determination." *In re C.A.K.*, 155 S.W.3d 554, 559 (Tex. App.– San Antonio 2004, pet. denied).  An arbitration award has the same effect as a judgment of a court of last resort, and is conclusive on the parties as to all matters of fact and law.  *CVN Group, Inc. v. Delgado*, 95 S.W.3d 234, 238 (Tex. 2002).  The Texas Arbitration Act "provides that it is the making of an arbitration agreement which confers jurisdiction on the court to enforce an arbitration agreement and to render judgment on an arbitration award under the Act." *Corrections Products Co., Ltd. v. Gaiser Precast Constr.*, 394 S.W.3d 818, 823 (Tex. App.– El Paso 2013, no pet.) (citing 6 TEX. CIV. PRAC. & REM. CODE ANN. §171.081 (Vernon 2011)).  A trial court is required to confirm an arbitration award unless statutory grounds for vacating or modifying it are presented,  6 TEX. CIV. PRAC. & REM. CODE ANN. §171.087 (Vernon 2011), and appellate review of an arbitration award "is so limited that [it] may

-13-

determinations that necessarily support the judgment issued in the State Court Litigation.

However, notwithstanding the application of collateral estoppel principles, the question remains as to whether the findings referenced or necessarily implied by the entry of the State Court Judgment are sufficient to warrant summary judgment that the debt arising from the Defendant's violations of the CTFA is nondischargeable as a debt arising from fraud or defalcation while acting in a fiduciary capacity under the provisions of §523(a)(4) of the Bankruptcy Code.

*Section 523(a)(4): Debt for Fraud or Defalcation While Acting in a Fiduciary Capacity*

11 U.S.C. §523(a)(4) provides that "[a] discharge under 11 U.S.C.§ 727 does not discharge an individual from a debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny."  The Fifth Circuit has noted "that this discharge

---

not vacate the award even if there is a mistake of fact or law." *Corrections Products*, 394 S.W.3d at 824.

However, even one were to assume, *arguendo*, that the State Court Judgment was void, a "district court's exercise of subject-matter jurisdiction, even if erroneous, is *res judicata* and is not subject to collateral attack through Rule 60(b)(4) if the party seeking to void the judgment had the opportunity previously to challenge jurisdiction and failed to do so." *Bell v. Bell Family Trust (In re Bell Family Trust)*, 2014 WL 3058319 at *3 (5th Cir. July 8, 2014).  *See also Picco v. Global Marine Drilling Co.*, 900 F.2d 846, 850 (5th Cir.1990) and circuit decisions cited therein [barring a Rule 60(b)(4) challenge to jurisdiction because the challenging party had notice of the order in question and opportunity to challenge jurisdiction on appeal, but did not do so]; *KBR, Inc. v. Chevedden*, 2013 WL 3713420, at *2 (S.D. Tex. July 12, 2013) (citations omitted) ["Courts agree that, in the interest of finality, the concept of setting aside a judgment on voidness grounds is narrowly restricted because of the tension between validity and finality in judgments. The tension between finality and voidness is reflected in the rule that when the asserted defect that makes the judgment 'void' is a lack of subject matter jurisdiction, Rule 60(b)(4) cannot be used for a collateral challenge when the court's exercise of jurisdiction was an error of law in determining whether it had jurisdiction, as opposed to a clear usurpation of power by that court."].

Accordingly, since the issue of whether a liability has been properly established under the Texas CTFA is not within this Court's exclusive jurisdiction, the State Court Judgment is entitled to full faith and credit, is immune from collateral attack in this Court under the Rooker-Feldman Doctrine, and the principles of collateral estoppel apply in the determination of the dischargeability of the judgment debt.

exception was intended to reach those debts incurred through abuses of fiduciary positions and through active misconduct whereby a debtor has deprived others of their property by criminal acts; both classes of conduct involve debts arising from the debtor's acquisition or use of property that is not the debtor's." *Miller v. J.D. Abrams Inc. (Matter of Miller),* 156 F.3d 598, 602 (5th Cir.1998), *cert. denied,* 526 U.S. 1016 (1999) (internal quotations omitted). Whether the actions of an individual were taken in a fiduciary capacity for the purposes of §523(a)(4) is determined by federal law. *FNFS, Ltd. v. Harwood (In re Harwood),* 637 F.3d 615, 620 (5th Cir. 2011). However, "state law is important in determining whether or not a trust obligation exists." *Gupta v. Eastern Idaho Tumor Institute, Inc. (In re Gupta)*, 394 F.3d 347, 350 (5th Cir. 2004).

The Fifth Circuit has discussed the concept of a fiduciary under §523(a)(4) in the following terms:

> [T]he concept of fiduciary under §523(a)(4) is narrower than it is under general common law. Under §523(a)(4), "fiduciary" is limited to instances involving express or technical trusts. The purported trustee's duties must, therefore, arise independent of any contractual obligation. The trustee's obligations, moreover, must have been imposed prior to, rather than by virtue of, any claimed misappropriation or wrong. Constructive trusts or trusts *ex malificio* thus also fall short of the requirements of §523(a)(4).
>
> Statutory trusts, by contrast, can satisfy the dictates of §523(a)(4). It is not enough, however, that a statute purports to create a trust: A state cannot magically transform ordinary agents, contractors, or sellers into fiduciaries by the simple incantation of the terms "trust" or "fiduciary." Rather, to meet the requirements of §523(a)(4), a statutory trust must (1) include a definable res and (2) impose "trust-like" duties.

**-15-**

*Texas Lottery Comm'n v. Tran (In re Tran),* 151 F.3d 339, 342-43 (5th Cir. 1998).  The statutory trust through which the Plaintiff seeks to impose a fiduciary capacity upon the Defendant in this case is created under the Texas Construction Trust Fund Act (the "CTFA").

*The Texas Construction Trust Fund Act*

The purpose of the CTFA is to protect artisans, laborers, subcontractors, materialmen, and now property owners, by creating a statutory trust fund for their benefit from payments made under a construction contract for the improvement of real property in Texas.[20]  As one court has succinctly described its primary contents:

> Under the CTFA, construction payments become trust funds "if the payments are made to a contractor or subcontractor or to an officer, director, or agent of a contractor or subcontractor, under a construction contract for the improvement of specific real property in this state." TEX. PROP.CODE ANN. § 162.001(a) (West 2014). "A contractor  . . .  who receives trust funds or who has control or direction of trust funds, is a trustee of the trust funds." *Id.* at §162.002.  In turn, a subcontractor who furnishes labor or material for an improvement on a specific piece of real property "is a beneficiary of any trust funds paid or received in connection with the improvement." *Id.* at §162.003(a).  Construction trust funds are misapplied when a trustee "intentionally or knowingly or with intent to defraud, directly or indirectly retains, uses, disburses, or otherwise diverts trust funds without first fully paying all current or past due obligations incurred by the trustee to the beneficiaries of the trust funds." *Id.* at § 162.031(a).

---

[20]  See 5 TEX. PROP. CODE ANN. §162.003 (Vernon Supp. 2014).

*Tag Inv., Ltd. v. Monaco (In re Monaco)*, 514 B.R. 477, 483 (Bankr. W.D. Tex. 2014).

Thus, the trust charges the holder, acting in the role of a statutory trustee, with protecting and segregating the construction payments for the benefit of would-be trust beneficiaries. Such beneficiaries need do nothing to secure their respective interests. Unlike the statutory requirements for perfection of a lien by a subcontractor under Chapter 53 of the Texas Property Code, neither the CTFA nor the jurisprudence construing it prescribe any procedural prerequisites or conditions. *In re Lone Oak Fabricators*, 2009 WL 1025092, at *5 (Bankr. E.D. Tex., Apr. 6, 2009) (*citing McCoy v. Nelson Util. Serv. Inc*., 736 S.W.2d 160, 164 (Tex. App.— Tyler 1987, writ ref 'd n.r.e.). If payments under a construction contract are deemed to be trust funds, entitlement vests "*without regard* to the laborer's compliance with the procedural requirements under Chapter 53." *Exchanger Contractors, Inc. v. Comerica Bank-Tex. (In re Waterpoint Int'l L.L.C.)*, 330 F.3d 339, 345 (5th Cir. 2003) (emphasis in original). Thus, in recognition of its role as a significant supplement to other remedies provided for suppliers and subcontractors in the Texas Property Code, such as the filing of liens under Chapters 53 and 56 therein, Texas courts construe the CTFA broadly to effectuate its remedial purpose – to protect the presumably "exposed" subcontractor or supplier from malfeasance by the recipient of construction payments. *Dealers Elec. Supply Co. v. Scroggins Const. Co., Inc.*, 292 S.W.3d 650, 658 (Tex. 2009).

With reference to the interplay between the CTFA and the existence of a fiduciary capacity under §523(a)(4) of the Bankruptcy Code, the Fifth Circuit has recognized that,

though the CTFA does not elevate every contractor who accepts funds or loans under a construction contract to the level of a §523(a)(4) fiduciary,[21] a fiduciary relationship imposed by the CTFA is sufficient for the purposes of nondischargeability under §523(a)(4) if the beneficiary-plaintiff can demonstrate the existence of wrongful conduct under the Act by the trustee-contractor. *Coburn Co. of Beaumont v. Nicholas (In re Nicholas)*, 956 F.2d 110, 113 (5th Cir. 1992). In other words, the Circuit in *Nicholas* "held that the Texas construction trust fund statute did create fiduciary duties encompassed by section 523(a)(4), but that such duties were defined by the prohibited activity — i.e. using construction trust funds for purposes other than paying the beneficiaries of those funds or expenses directly related to the construction project." *Vulcan Constr. Materials, L.P. v. Kibel (In re Kibel)*, 2011 WL 1042575 at * 8 (Bankr. W.D. Tex., Mar. 16, 2011) (internal quotations omitted). Thus, as described in the vernacular of the Act, "if the funds in question were retained, used, or diverted to any use other than actual expenses directly related to the construction or repair of the improvement, then they will be held to have been misapplied in a fashion that is actionable under section 523(a)(4)." *Airtron, Inc. v. Faulkner (In re Faulkner)*, 213 B.R. 660, 665 (Bankr. W.D. Tex. 1997).

---

[21]  This is due to the availability of certain affirmative defenses to a contractor under the Act, such as demonstrating that the funds were used to pay actual expenses directly relating to the construction project or where the funds have been retained, with notice to the beneficiary, because the contractor reasonably believes that the beneficiary is not entitled to the funds. See TEX. PROP. CODE §162.031(b) (Vernon Supp. 2014).

In this case, the summary judgment record firmly establishes that the Defendant was found in the State Court Litigation to have engaged in wrongful conduct as to the CTFA trust funds in his possession.  Indeed, going beyond the boundaries of mere intentional or knowing behavior, the State Court determined that the Defendant had diverted the $98,737.99 in trust funds *with an intent to defraud* the Plaintiffs as defined by §162.005 of the CTFA.  Thus, notwithstanding the paucity of detailed factual findings in the record regarding the series of events leading to the imposition of liability upon the Defendant in the State Court Litigation, the record establishes the two requisite elements for a determination of nondischargeability under §523(a)(4) — a debt created:  (1)  by fraud[22] and (2) while acting in a fiduciary capacity.[23]  There is simply no other factual issue which needs to be tried.  Thus, the entry of judgment as a matter of law on the Plaintiffs' claim under §523(a)(4) is appropriate and the actual damages of $98,737.99 evidenced by the State Court Judgment are rendered nondischargeable under §523(a)(4) as arising from fraud or defalcations committed by the Defendant while acting in a fiduciary capacity.

---

[22]  It is clear, however, that, even in the absence of a fraud finding, an intentional and/or knowing diversion of trust funds in violation of the CTFA would also trigger the "culpable state of mind requirement," such as is now necessary to constitute a defalcation for the purposes of §523(a)(4) under the recent decision of the United States Supreme Court in *Bullock v. BankChampaign, N.A.*, ___U.S.___, 133 S.Ct. 1754 (2013).

[23]  Indeed, even under earlier, more restrictive versions of the CTFA, such limited findings would have constituted grounds for nondischargeability under §523(a)(4).  *See, e.g., Boyle v. Abilene Lumber, Inc.*, 819 F.2d 583 (5th Cir. 1987).  As later characterized by the Circuit, "*Boyle* interpreted the former Texas statute to create a fiduciary duty only to the extent that a trustee should not divert trust funds with [an] intent to defraud."  *Nicholas*, 956 F.2d at 113.

*Attorney's Fees, Interest, and Court Costs*

With regard to the non-dischargeability of attorney's fees and interest awarded to the Plaintiffs in the State Court Judgment, the United States Supreme Court has stated that "[o]nce it is established that specific money or property has been obtained by fraud, . . . 'any debt' arising therefrom is excepted from discharge." *Cohen v. de la Cruz,* 523 U.S. 213, 218 (1998); *see also Snook v. Popiel (In re Snook)*, 168 Fed. App'x. 577, 578 (5th Cir. 2006); *S&S Food Corp. v. Sherali (In re Sharali)*, 490 B.R. 104, 125 (Bankr. N.D. Tex. 2013).  Though the facts in *Cohen* specifically addressed a liability rendered nondischargeable under the actual fraud prong of §523(a)(2)(A), its rationale[24] to prevent a discharge of all liability arising from circumstances that render a debt nondischargeable under §523(a) has been extended to cases in which the primary debt is rendered nondischargeable due to fraud or defalcation while acting in a fiduciary capacity.  *Drexel Highlander Ltd. P'ship v. Edelman (In re Edelman)*, 2014 WL 1796217, at *43 (Bankr. N.D. Tex., May 6, 2014); *Conte v. Woomer (In re Woomer),* 2013 WL 5536072, at *18 (Bankr. E.D. Tex., Oct. 7, 2013); *Indo-Med Commodities, Inc. v. Wisell (In re Wisell)*, 494 B.R. 23, 43 (Bankr. E.D.N.Y. 2011); *In re Palombo*, 456 B.R. 48, 64-65 (Bankr. C.D. Cal. 2011).

However, a certain portion of the actual damages awarded in the State Court Judgment are not subject to this nondischargeability determination.  The portion of the

---

[24] *Cohen* recognized that §523(a) should be properly construed to bar the discharge of all liability arising from the categories of misconduct that render a debt nondischargeable, thereby insuring "that the creditors' interest in recovering full payment of debts in these categories outweigh[s] the debtors' interest in a complete fresh start." *Cohen*, 523 U.S. at 222.

-20-

actual damages rendered nondischargeable under §523(a)(4) comprises approximately

73% of the claim previously awarded to the Plaintiffs in the State Court Judgment.  When

only a portion of an established indebtedness is declared nondischargeable, courts have

held that attorneys' fees are nondischargeable in the same proportion as the compensatory

damages are held to be nondischargeable.  *Belfor USA Group, Inc. v Hopkins (In re*

*Hopkins),* 469 B.R. 319, 326 (Bankr. W.D. Mo. 2012); *Integrated Practice Mgmt Inc. v.*

*Olson (In re Olson)*, 325 B.R. 791, 802 (Bankr. N.D. Iowa 2005); *Conte v. Woomer (In re*

*Woomer)*, 2013 WL 5536072, at *19 (Bankr. E.D. Tex., Oct. 7, 2013).  *See also In re*

*Hunter*, 771 F.2d 1126, 1131 (8th Cir.1985) [holding that the plaintiff may be entitled to

recover attorneys' fees ancillary to the portion of the debt that was nondischargeable, "or

those charges may be subject to apportionment between the dischargeable and

nondischargeable parts of the underlying indebtedness."].  Since approximately 73% of

the underlying indebtedness owed to the Plaintiffs arising from the State Court Judgment

is nondischargeable, the same percentage of the $75,000.00 in attorney's fees awarded to

the Plaintiffs in the State Court Judgment should be deemed nondischargeable  under the

well-established jurisprudence that an award of attorneys' fees attributable to efforts to

secure a determination that a particular debt is nondischargeable also renders those fees

nondischargeable. *Gober,* 100 F.3d at 1208*; Luce v. First Equipment Leasing Corp.*

*(Matter of Luce)*, 960 F.2d 1277, 1286 (5th Cir. 1992); *Viking Dynamics, Ltd. v. O'Neill*

*(In re O'Neill)*, 260 B.R. 122, 129-30 (Bankr. E.D. Tex. 2001).  Thus, the proportional

sum of $54,750.00 in attorney's fees will be declared nondischargeable under

§523(a)(4).[25]  Under the same rationale, the sum of $3,069.34 of the $4,204.57 in court costs awarded under the State Court Judgment will be declared nondischargeable under §523(a)(4).  Further, court costs of $293.00 incurred by the Plaintiffs in this adversary proceeding are assessed against the Defendant.

## Conclusion

Accordingly, upon due consideration of the pleadings, the proper summary judgment evidence submitted by the Plaintiffs, the relevant legal authorities and for the reasons set forth herein, the Court concludes that there is no genuine issue as to any material fact regarding the Plaintiffs' claims under §523(a)(4) and that the Plaintiffs, Harry and Dana Margolis, are entitled to summary judgment that the following amounts of the debt owed to them by the Defendant, Barry Irwin Hensley, are hereby excepted from the discharge of the Defendant, Barry Irwin Hensley, as a debt arising from fraud in a fiduciary capacity pursuant to 11 U.S.C. §523(a)(4):

(a)   $156,557.33 of the debt due and owing by the Defendant, Barry Irwin Hensley, to the Plaintiffs, Harry and Dana Margolis, arising from the entry of the State Court Judgment on April 19, 2013, plus all post-judgment interest that has accrued upon that particular sum at 5% per annum as awarded by the State Court Judgment since April 19, 2013, until paid;

(b)   an additional award of court costs incurred in this action in the amount of $293.00, with post-judgment interest at the federal post-judgment interest rate of 0.10% to accrue upon that sum from September 30, 2014, until paid.

---

[25]  In light of this summary judgment and because, in any event, there is no statute that would authorize any award of attorney's fees to the Defendant under these circumstances, all relief sought by the Defendant's counterclaim in this proceeding will be denied.

All relief requested by the Defendant's counterclaim in the above-referenced adversary proceeding shall be denied.  An appropriate order and a judgment will be entered which are consistent with this opinion.

Signed on 10/01/2014

THE HONORABLE BILL PARKER
UNITED STATES BANKRUPTCY JUDGE